IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE SANTOS HERNANDEZ-ESQUIVEL, A # 078 897 862, | § § § § | |
| *Petitioner*, | § | |
| vs. | § § | |
| RAY CASTRO, WARDEN OF THE SOUTH TEXAS DETENTION COMPLEX; DANIEL BIBLE, SAN ANTONIO FIELD OFFICER; IMMIGRATION AND CUSTOMS ENFORCEMENT; DEPARTMENT OF HOMELAND SECURITY; AND KIRSTJEN NIELSEN, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY[1], | § § § § § § § § § § § § | 5-17-CV-0564-RBF |
| *Respondents*. | § | |

## ORDER

Petitioner Jose Santos Hernandez-Esquivel, a native of Mexico, is being held at the South Texas Detention Complex pending his removal or deportation from the United States. He has been in custody since at least August 29, 2016, pursuant to an order reinstating a prior order of removal from 2006. Although Hernandez-Esquivel does not challenge the merits of the reinstated removal order, he is administratively seeking collateral relief from removal through a U-Visa request (initially denied and now on administrative appeal) and a claim under the United Nations Convention Against Torture (initially denied by an immigration judge and on appeal with the Board of Immigration Appeals (BIA)).

---

[1] The Court has added Kirstjen Nielsen, the current Secretary of the Department of Homeland Security, as a respondent, *see* Fed. R. Civ. P. 21, however, "the only proper respondent is the immediate custodian of the petitioner who has the ability to produce the petitioner before the Court," *Bonitto v. Bureau of Immigration & Customs Enf't*, 547 F. Supp. 2d 747, 751 (S.D. Tex. 2008).

In this § 2241 habeas action, Hernandez-Esquivel challenges the propriety of his continued detention during the pendency of the collateral proceedings he has initiated to contest his removability. He cannot be removed while his Convention Against Torture claim is pending. And the proceedings promise to take months, or even longer, to fully resolve. The record reflects, however, that but-for those collateral proceedings, Hernandez-Esquivel would be removed to Mexico forthwith. At issue is whether Hernandez-Esquivel's continued detention, under 8 U.S.C. § 1231(a)(6), violates governing immigration laws or his due process rights. Hernandez-Esquivel seeks either an individualized bond hearing or an order releasing him under reasonable conditions of supervision pending a fully final outcome with respect to his immigration status.

Thus, before the Court is Hernandez-Esquivel's § 2241 Habeas Corpus Petition challenging his detention by Respondent Bureau of Immigration and Customs Enforcement (ICE). *See* Dkt. No. 1. Also before the Court are Respondents' Motion to Dismiss Petitioner's Habeas Corpus Petition, Dkt. No. 13; Petitioner's Response to Respondents' Motion, Dkt. No. 14; Respondents' Supplement, Dkt. No. 18; and Petitioner's Reply in Opposition to Respondents' Supplement, Dkt. No. 19. The parties filed the supplemental briefing at the Court's request. This Order is entered pursuant to 28 U.S.C. § 636(c), and the District Court's reassignment of this case to the undersigned following the parties' consent to trial by a U.S. Magistrate Judge. *See* Dkt. Nos. 8, 9, & 10.

After careful review of the petition, the motion to dismiss, the responses, the supplemental briefing, the applicable law, and the record in this case that includes a hearing the Court held on this matter, the Court **GRANTS** the Motion to Dismiss, Dkt. No. 13. Hernandez-Esquivel, however, will have an opportunity to amend the petition to cure the deficiencies outlined in this order.

## I. Factual and Procedural Background

Petitioner Hernandez-Esquivel is a native-born citizen of Mexico. He first entered the United States illegally with his family in 1994, when he was about 11 years old. He later married a U.S. citizen. He now has three children; all are U.S. citizens. His home is in Austin, Texas.

A January 5, 2006 order directed Hernandez-Esquivel's removal from the United States. He was later convicted of illegal entry and removed. *See* Dkt. No. 13-1. Then, on an unknown date, he once again illegally entered the United States. For this he was convicted, on November 14, 2014, of illegal reentry. ICE eventually took him into custody to effect his (re)removal by reinstating the prior 2006 order. But at some point after his illegal reentry, authorities arrested him on state criminal charges. He remained in state custody throughout the resulting state criminal proceedings, until his eventual acquittal on August 29, 2016. Then, on September 2, 2016, ICE once again took him into custody and served him with a Notice of Intent/Decision to Reinstate Prior Order of Removal. Dkt. No. 13-2. The notice alleges Hernandez-Esquivel is removable under § 241(a)(5) of the Immigration and Nationality Act as an alien who illegally reentered the United States after having been previously removed, or who departed voluntarily under an order of exclusion, deportation, or removal and therefore was subject to removal by reinstatement of the prior order. *Id*.

On February 6, 2017, Hernandez-Esquivel requested a bond hearing before an Immigration Judge. At that time, however, he was also in the process of seeking to withhold his removal under 8 U.S.C. § 1229a, and so the Immigration Judge denied the bond-hearing request for lack of jurisdiction. *See* App. A to Dkt. No. 1. On March 30, 2017, almost seven months after Hernandez-Esquivel received notice of the reinstated removal order, he invoked the United Nations Convention Against Torture and sought to defer the reinstated order on the basis of his asserted fear of returning to Mexico. *See* 8 C.F.R. § 1208.16(c)(3). His removal was then

deferred, pending a final determination on his claim under the Convention Against Torture. *See id.* § 1208.17(a).

On June 23, 2017, Hernandez-Esquivel filed a Petition for Writ of Habeas Corpus in this Court, challenging his continued detention. Shortly after filing his habeas petition, Hernandez-Esquivel's application for withholding of removal under the Convention Against Torture was denied, and his file was returned to the Department of Homeland Security (DHS) for execution of the reinstated removal order. Dkt. No. 13-3. Hernandez-Esquivel then timely filed a notice of appeal with the BIA, in August of 2017, in which he challenged the disposition of his Convention Against Torture claim. He cannot be removed while this appeal remains pending. *See* Dkt. No. 13-4; *see also* 8 U.S.C. § 1231(b)(3). Moreover, Hernandez-Esquivel states in his Response to the Motion to Dismiss that he previously filed an application for a U-Visa. A U-Visa can be available to qualifying victims of certain listed crimes who assist U.S. law enforcement officials in investigating or prosecuting those crimes. *See Ordonez Orosco v. Napolitano*, 598 F.3d 222, 224 (5th Cir. 2010). The U-Visa application was denied, and Hernandez-Esquivel is administratively appealing that decision as well. *See* Dkt. No. 14.

In the instant habeas petition, Hernandez-Esquivel seeks a bond hearing or release, the latter with either reasonable conditions of supervision or on his own recognizance. He also seeks attorney's fees pursuant to the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412.

## II. Discussion

*A. Jurisdiction.* A brief discussion of the Court's jurisdiction is needed. The REAL ID Act divests federal courts of jurisdiction to consider challenges to removal orders. *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007) (citing 8 U.S.C. § 1252(a)(5) and *Rosales v. Bureau of Immigration & Customs Enf't*, 426 F.3d 733, 735-36 (5th Cir. 2005)). Additionally, federal courts lack jurisdiction to review discretionary decisions of the Attorney General. *Zadvydas v.*

*Davis*, 533 U.S. 678, 688 (2001) (citing 8 U.S.C. § 1252(a)(2)(B)(ii)); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) (citing *Kambo v. Poppell*, No. SA-07-CV-800-XR, 2007 WL 3051601, at *6, *8 (W.D. Tex. Oct. 18, 2007) (involving discretionary bond determinations)). Federal courts, however, can adjudicate claims challenging the constitutionality of an alien's continued detention. *See Abdulle v. Gonzales*, 422 F. Supp. 2d 774, 776 (W.D. Tex. 2006) (citing *Gul v. Rozos*, 163 F. App'x 317, 2006 WL 140540, at *1 (5th Cir. 2006)). Indeed, the Supreme Court recognized in *Zadvydas* that § 1231(a)(6) "contain[s] an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." 533 U.S. at 682. A challenge to this limitation is a focus of Hernandez-Esquivel's petition.

Accordingly, Hernandez-Esquivel maintains that his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas* and *Clark v. Martinez*, 543 U.S. 371 (2005), and is excessive, arbitrary, and in violation of his due process rights. *See* Dkt. No. 19 at 3. He urges that his "petition for habeas relief does not seek resolution of his potential immigration relief and benefits, nor does [it] challenge the [G]overnment's denial of bond." Dkt. No. 14 at 12. These claims challenge the legality of his continued detention pending resolution of his collateral proceedings and resulting appeals, as well as "'the statutory framework that permits [his] detention without bail.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). As such, his habeas claims can be adjudicated without addressing the merits of any final order of removal, and they likewise do not involve a challenge to any discretionary decision of the Attorney General or any decision "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." *Id*. (quotation marks omitted). Accordingly, the Court's jurisdiction is not precluded by the REAL ID Act. *See Abdulle*, 422 F. Supp. 2d at 776 (citing *Gul*, 2006 WL 140540 at *1).

*B. Hernandez-Esquivel is Detained Pursuant to § 1231(a).* There is some confusion in the briefing over the statutory basis for Hernandez-Esquivel's detention, which the Court will now dispel. At least one statement by Hernandez-Esquivel appears to request relief from continued detention under 8 U.S.C. § 1226(a). *See* Dkt. No. 1 at 10 ("Mr. Hernandez-Esquivel's detention is governed by 8 U.S.C. § 1226(a) and he is therefore entitled to a bond hearing."). Section 1226(a), however, addresses detention prior to the issuance of any order of removal. It does not govern Hernandez-Esquivel's detention, which is pursuant to a reinstated 2006 removal order. Detention here is instead governed by 8 U.S.C. § 1231(a). In his Reply in Opposition to Respondents' Supplement to their Motion to Dismiss, Hernandez-Esquivel acknowledges this. Dkt. No. 19 at 3 (arguing that his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas* and *Clark*).

Section 1231(a), which is entitled, "[d]etention, release, and removal of aliens ordered removed," applies to the detention of aliens like Hernandez-Esquivel who have been ordered removed. 8 U.S.C. § 1231(a) (emphasis removed). Subsection (5) of § 1231(a) provides for the reinstatement of a prior order of removal, which once reinstated is not subject to reopening or review:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). The Court notes that Hernandez-Esquivel's reinstated removal order is sufficiently final and governs here, notwithstanding his pending request for relief under the Convention Against Torture or his U-visa application. *See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 489 (5th Cir. 2015) (notwithstanding petitioner's subsequent application for relief under the Convention Against Torture, petitioner was subject to the provisions of § 1231(a)(5) based on

her previous illegal reentry after having been removed); *see also Dos Santos v. Sessions*, 706 F. App'x 829, 831 (5th Cir. 2017) (petitioner ordered removed under § 1231(a)(5) pursuant to a reinstated order of removal notwithstanding application for withholding of removal under the Convention Against Torture).

Typically, aliens who are not subject to a prior order of removal "may be released on bond or paroled" during the pendency of their removal proceedings. *Zadvydas*, 533 U.S. at 683. But a different rule applies here. Section 1231(a) describes a 90-day "removal period." And in a case like this under § 1231, "[a]fter entry of a final removal order and during the 90-day removal period, . . . aliens *must* be held in custody." *Id.* (emphasis added and citing 8 U.S.C. § 1231(a)(2), which provides "[d]uring the removal period, the Attorney General shall detain the alien"). Detention during the removal period here, in other words, is mandatory.

The removal period begins on the latest of the following:

(i)     The date the order of removal becomes administratively final.

(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). The parties agree that the § 1231(a) removal-period clock started with service to Hernandez-Esquivel of his reinstated order of removal.

Once the removal period expires, however, § 1231(a)(6) directs that a removable alien who is also inadmissible "may" be detained or released on bond:

An alien ordered removed who is inadmissible . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6). Hernandez-Esquivel falls within the purview of § 1231(a)(6); he is removable and also inadmissible because he is "present in the United States without

being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). His detention is therefore discretionary once the removal period has run.

Section 1231 provides that the removal period may be suspended, including when the alien acts to prevent removal.

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or *acts to prevent the alien's removal* subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C) (emphasis added).

Finally, notwithstanding the 90-day language in the statute, the Supreme Court has held that, "for the sake of uniform administration in the federal courts" and in order to accomplish an alien's removal, six months is a presumptively reasonable length of time to detain a removable alien in order to effectuate removal. *Zadvydas*, 533 U.S. at 701. Although *Zadvydas* involved only a limited subclass of aliens, the Supreme Court later, in *Clark*, extended *Zadvydas*'s reasoning to include aliens classified as inadmissible under § 1182, like Hernandez-Esquivel. *Clark*, 543 U.S. at 386.

*C. Detention under § 1231(a).* Hernandez-Esquivel contends that his continued detention violates his substantive due process rights and 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas* and *Clark*. The Court in *Zadvydas* construed § 1231 to comport with due process protections and ensure detention is not indefinite and potentially permanent. Here, even accepting the petition's factual allegations as true, Hernandez-Esquivel's continued detention does not violate § 1231(a), as construed by *Zadvydas* and *Clark*.

The Supreme Court in *Zadvydas* determined that § 1231(a)(6) is "ambiguous" because although it appears to indicate that certain aliens ordered removed "may be detained beyond the removal period," it does not appear to limit the length of that post-removal-period detention. *See*

*Jennings*, 138 S. Ct. at 843 (citing *Zadvydas*, 533 U.S. at 699). Ultimately, the Court interpreted § 1231(a)(6) to comport with due process by construing it to limit post-removal-period detention to a "period no longer than what is reasonably necessary to effectuate removal." *Zadvydas*, 533 U.S. at 689. In other words, if detention is no longer than reasonably necessary to effectuate removal, it will comport with § 1231(a)(6), *Zadvydas* and *Clark*, as well as substantive due process protections.

*Zadvydas* sets no definite limit on what constitutes a "period no longer than what is reasonably necessary to effectuate removal." *Id.* But detention lasting up to six months is presumptively reasonable under *Zadvydas*. *Id.* The Court explained that due process permits that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Recognizing that determining reasonableness likely entails a fact-intensive inquiry, *Zadvydas* provides that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

*Zadvydas* also establishes a burden-shifting scheme, which takes effect after an alien has been detained longer than six months and under which the alien must first "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). If the detainee meets that initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701; *Andrade*, 459 F.3d at 543.

1. Hernandez-Esquivel Cannot Carry His Burden. To meet his burden under *Zadvydas*, Hernandez-Esquivel must allege facts that, if proven true, are capable of showing there is no significant likelihood of his removal in the reasonably foreseeable future. *Andrade*, 459 F.3d at 543. Respondents aptly sum up the reason Hernandez-Esquivel's claims, as currently alleged,

fall short: there is no dispute "that [Hernandez-Esquivel's] removal to Mexico has been delayed *solely* because of his application for withholding of removal." Respondents' Supplement, Dkt. No. 18 at 2 (emphasis added); *see also id.* at 6 ("[C]ounsel for the Petitioner conceded that if the Petitioner is administratively/judicially denied his withholding of removal . . . , there [ ] will be no impediment for the government to securing his timely removal to Mexico. Indeed, this removal to Mexico would likely take place, at the latest, within days."); Dkt. No. 19 at 6 (invoking the delay associated with ongoing efforts to challenge removability as the reason removal is not likely in the reasonably foreseeable future).

Hernandez-Esquivel fails to state a claim through his bare assertion that his detention is unlawful due to its length, given that his continued detention is *solely* attributable to ongoing collateral proceedings he initiated to challenge his removability. To conclude otherwise would invite potentially frivolous collateral challenges to unreviewable removal orders. It has been noted:

> "[C]ourts must be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration. Without consideration of the role of the alien in the delay, we would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release."

*Wilson v. Mukasey*, No. CIV. A. 2:08-1646, 2010 WL 456777, at *9 (W.D. La. Feb. 2, 2010) (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)). Hernandez-Esquivel also places undue emphasis on the six-month presumptive period by seeking to effectively transform it into a *de facto* bright-line outer limit for the length of detention. The inquiry under *Zadvydas* does not begin and end once detention extends beyond six months. The focus is instead on whether there is or could be good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Here, even taking the facts alleged in the petition as true, there is

no good reason to doubt that Hernandez-Esquivel will be removed in the reasonably foreseeable future once his various challenges to his removability are denied.[2] He has not alleged facts that, if proven true, would show his detention threatens to be either indefinite or potentially permanent so as to run afoul of *Zadvydas* or violate due process.

The Court's reasoning should not be taken as seeking to establish or rely on a bright-line rule under which detainee-initiated proceedings challenging removability necessarily foreclose any claim under *Zadvydas*. Although the Court takes no position on the matter at this time, it is possible that a petitioner in such circumstances might state a claim by alleging facts that, if taken as true, provide good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *See, e.g., Kambo*, 2007 WL 3051601, at *19 (noting, in support of an order releasing the petitioner during ongoing proceedings, the significant record reflecting a strong challenge to petitioner's removability).[3] At this time, however, Hernandez-Esquivel offers

---

[2] *See Adefemi v. Gonzales*, 228 Fed. App'x 415, 416-17 (5th Cir. 2007) (per curiam) ("The Government presented evidence that Adefemi's removal was imminent . . . It was unable to remove Adefemi, however, because Adefemi had moved to reopen his immigration proceedings, and the Bureau of Immigration Appeals had granted his request to stay the removal . . . Adefemi has failed to show good reason to believe that there is no likelihood of his removal."); *Okechukwu Mummee Amadi v. Young*, No. 2:06-cv-1138, 2007 WL 855358, at *4 (W.D. La. Feb. 12, 2007) ("[T]he court finds that because petitioner's continuing litigation is the cause of his continued detention, he cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future. Once petitioner's legal proceedings are concluded, it is likely that he will be removed to Nigeria."); *see also Silvera v. Joyce*, No. EP-17-cv-00363-DCG, 2018 WL 1249913, at *4 (W.D. Tex. Mar. 9, 2018).

[3] *See also id.* at *19 ("The immigration judge issued his decision on the merits, finding that Kambo was not an alien described in section 237(a)(4)(D) . . . Thus, at this point in time, there is a significant likelihood that Kambo is not subject to removal and a judge has found that he is not within the no-bond, no-review class of aliens described in section 237(a)(4)(D). The Immigration Judge also found that the discretionary factors weighed in favor of release on bond. Given this posture, it appears necessary then" to inquire into the propriety of continued detention); *Ly*, 351 F.3d at 271 ("The actual removability of a criminal alien therefore has bearing on the reasonableness of his detention prior to removal . . . "); *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 459-60 (D. Mass. 2010) (involving a record reflecting initial successes touching on the merits of removability in that the BIA remanded the removability issue repeatedly); *Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1034 (E.D. Wis. 2007) (denying relief to detained alien on various challenges but recognizing that cases in which courts have found

only conclusory statements that he has presented a well-founded fear of returning to Mexico that, in his view, will ultimately provide him relief from the reinstated order of removal. *See* Dkt. No. 19 at 14 ("When he was transferred into ICE custody, Mr. Hernandez-Esquivel told the officers that he feared for his life and safety if he returned to Mexico because of his experience after his prior removal . . ."). Such conclusory statements are alone insufficient. *See Andrade*, 459 F.3d at 543-44 ("Andrade has offered nothing beyond his conclusory statements suggesting that he will not be immediately removed to Cape Verde following the resolution of his appeals.").

Indeed, in the context of a motion to dismiss, a court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rather, "[d]ismissal [under Rule 12(b)(6)] is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face and has failed to raise a right to relief above the speculative level." *Emesowum v. Hous. Police Dep't*, 561 Fed. App'x. 372, 372 (5th Cir. 2014) (per curiam) (quotation marks omitted). A § 2241 petitioner, in the Court's view, raises no more than a speculative claim under *Zadvydas* by alleging only that collateral proceedings challenging removal have been initiated and, as a result of those proceedings, detention will extend beyond six months.

A number of decisions from within this circuit, involving circumstances analogous to those presented here, reflect that continued detention can be lawful even though it is similar in length to—or even lengthier than—the period of detention at issue here, provided there is a sufficient likelihood of removal in the reasonably foreseeable future.[4] The Fifth Circuit's

---

unconstitutional lengthy pre-removal detention involved situations where "there was already a strong suggestion that removal was not a practical possibility, even though the removal proceeding was not yet complete").

[4] *See, e.g.*, *Adefemi*, 228 F. App'x at 416 (two-and-half year post-removal-order detention permitted); *Quintero v. Holder*, No. SA:14-CV-474-XR, 2014 WL 4063966, at *4 (W.D. Tex.

decision in *Thompson v. Holder*, 374 F. App'x 522, 523 (5th Cir. 2010) (per curiam), also supports this conclusion. In *Thompson*, the petitioner sought judicial review after the BIA affirmed an order of removal. The Government sought, and received, a stay in Thompson's case pending a ruling in another case, and Thompson sought, and received, a stay of removal. Thompson then filed a § 2241 habeas petition seeking release on bond during the pendency of his case. The court held that Thompson's continued "detention [was] neither indefinite nor potentially permanent as there [was] a certain end point to the proceedings related to [petitioner's] pending petition for review and as it appear[ed] reasonably likely that he [would] be removed in the foreseeable future if his petition [were] denied." *Id*.

The decision in *Maramba v. Mukasey*, No. 3:08-CV-0351-K, 2008 WL 1971378, at *3 (N.D. Tex. Apr. 28, 2008), is also helpful. There, the petitioner was subject to discretionary detention under § 1226(a) and sought release on bond, via a § 2241 habeas petition, during the pendency of his BIA appeal and likely Fifth Circuit appeal. The court denied relief, explaining that without any indication custody would last longer than the removal proceedings (and appeals), there were no grounds to find the detention indefinite or potentially permanent:

> [Petitioner's] detention has a definite termination point and, thus, is neither "indefinite" nor "potentially permanent." Upon completion of the appeal process, Petitioner will be subject to removal from the United States, or will be granted asylum. There is no indication that his custody will last longer than the duration of his removal proceedings.

---

Aug. 8, 2014) (pre-removal detention of 7 months, with a further 6-8 months anticipated, permitted where petitioner sought withholding of removal) (citing *Kim v. Obama*, No. EP:12-CV-173-PRM, 2012 WL 10862140, at *3 (W.D. Tex. Jul. 10, 2012) (post-removal-order detention of one-and-a-half years permitted given that continued detention was a direct result of the petitioner's efforts and not improper behavior by the Government)); *Garcia v. Lacy*, No. H-12-3333, 2013 WL 3805730, at *5 (S.D. Tex. Jul. 19, 2013) (pre-removal-order detention of two years and three months permitted given that much of the delay was attributable to petitioner); *Saeku v. Johnson*, No. 1:16-CV-155-O, 2017 WL 4075058, at *3-4 (N.D. Tex. Sept. 14, 2017) (pre-removal-order 18-month detention permitted where detainee sought continuances and filed appeal); *Worku v. Cole*, No. 1:12-CV-01808, 2012 WL 3309378, at *4 (W.D. La. Jul. 16, 2012) (18-month detention permitted where both sides filed appeals).

*Id.* at *5.

In arguing to the contrary, Hernandez-Esquivel's reliance on case law is too often misplaced. His faith in the holding of *Abdulle* is one example. 422 F. Supp. 2d at 778-79; *see* Dkt. 19 at 7 & n.16. Abdulle's removal was delayed because of an injunction, not proceedings instituted by him challenging his removability. A petitioner, in other words, might state a claim and ultimately be able to show good reason to believe an insufficient likelihood of his removal in the foreseeable future in circumstances where removal is prevented by a court order of potentially indefinite duration. That situation is very different from the one presented here.

Hernandez-Esquivel is similarly misguided to rely on *Ly*, which involved a request for *indefinite detention* based on the lack of a repatriation treaty between the United States and Vietnam. 351 F.3d at 266 ("The parties here ask whether Ly may be *indefinitely incarcerated . . .* pending his removal to Vietnam, given that *such removal is not currently foreseeable* due to the lack of a repatriation treaty between the United States and Vietnam.") (emphasis added). Indeed, Ly presented a similar issue to *Zadvydas*, except in the pre-removal-order context. *See id.* at 267 ("The question remaining before us is whether the holding of *Zadvydas* extends to the mandatory pre-removal detention statute, § 236."). The Government does not seek indefinite detention here; the cornerstone of the Government's arguments is instead that detention here will *not* be indefinite because there is a reasonable likelihood of removal in the foreseeable future.

2. Tolling the 6-Month Presumptively Reasonable Period. In the alternative, Hernandez-Esquivel's continued detention is permissible, and he fails to state a claim upon which relief may be granted, because his six-month presumptively reasonable period under *Zadvydas* should be tolled. *See Lawal v. Lynch*, 156 F. Supp. 3d 846, 854-55 (S.D. Tex. 2016) (citing *Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993)). In *Balogun*, the Fifth Circuit held that a six-month period available for deportation can be tolled if the conduct of a deportable alien "hampers" or

delays removal. 9 F.3d at 350-51. Although *Balogun* involved alleged acts by the detainee to prevent authorities from obtaining travel documents, the *Balogun* opinion recognizes that the Second Circuit and several district courts will equitably toll the six-month period when a detainee "hampers" removal by "initiating litigation regarding the validity of the deportation order." *Id.* at 351 (citing *e.g.*, *Doherty v. Thornburgh*, 943 F.2d 204, 211-12 (2d Cir. 1991) (noting, the "six month period is tolled while detainee-initiated litigation concerning the deportation is pending"); *Dor v. Dist. Dir., Immigration & Naturalization Serv.*, 891 F.2d 997, 1002-03 (2d Cir. 1989) (same); *Bartholomeu v. Dist. Dir., Immigration & Naturalization Serv.*, 487 F. Supp. 315, 319-20 (D. Md. 1980) (same); *United States ex rel. Lam Tuk Man v. Esperdy*, 280 F. Supp. 303, 304 (S.D.N.Y. 1967) (same); *United States ex rel. Cefalu v. Shaughnessy*, 117 F. Supp. 473, 474 (S.D.N.Y.), *aff'd sub. nom.*, 209 F.2d 959 (2d Cir. 1954) (per curiam) (same)); *see also Worku*, 2012 WL 3309378 at *4 (18-month detention permitted where both sides filed appeals).[5]

In *Lawal*, a case out of the Southern District of Texas, the petitioner sought habeas relief by arguing his detention exceeded six months and he was eligible for asylum and withholding of removal under the Convention Against Torture. 156 F. Supp. 3d at 849-50. The court found that because the petitioner had filed litigation that prolonged his detention and delayed his removal, the six-month detention period could be equitably tolled. *Id.* at 854. These decisions reflect that equitable tolling provides an additional, independent basis to grant the Government's motion to dismiss.[6]

---

[5] The equitable tolling addressed here is not necessarily equivalent to statutory suspension of the removal period under § 1231(a)(1)(C), which provides for "suspension of [the removal] period" "if the alien . . . acts to prevent the alien's removal subject to an order of removal."

[6] The propriety of any equitable tolling might in an appropriate case be affected by allegations of specific, non-conclusory facts reflecting that collateral proceedings challenging removability have a meaningful chance of success, although the Court takes no position on the matter at this time.

*D. Bond under § 1231(a).* Hernandez-Esquivel also would take issue with an alleged "lack of an administrative custody review process," which he vaguely asserts, "on its face and as applied to [him] violates his right to due process as guaranteed by the Fifth Amendment to the United States Constitution[,] especially considering he has been sitting in ICE custody for [approximately 19] months, and will continue to do so without habeas relief, with no end in sight." Dkt. No. 1 at 12-13. This undeveloped contention, unsupported in the habeas petition or response to the motion to dismiss by any further description of the alleged "lack of an administrative review process" is unavailing. In the context of a motion to dismiss, as here, "[a] claim has facial plausibility" so long as the pleadings include "factual content that allows the court to draw the reasonable inference" that the defendant is liable. *Iqbal*, 556 U.S. at 678. There is insufficient factual content alleged here to provide this claim with facial plausibility.

In any event, to the extent Hernandez-Esquivel's claim seeks periodic bond hearings in federal court, it fails. *Zadvydas* addressed the extent to which due process demands relief in the § 1231(a) setting, concluding that relief is required only once continued detention is unreasonable. 533 U.S. at 699; *see also Jennings*, 138 S. Ct. at 843. Hernandez-Esquivel fares no better with an argument founded on a purported statutory basis for periodic bond hearings. Recently, in *Jennings*, the Supreme Court considered whether detained aliens have a right to periodic bond hearings pursuant to several statutory provisions authorizing detention during the pendency of removal proceedings. 138 S. Ct. at 839. Although *Jennings* addressed bond hearings as they relate to statutorily authorized detention where there is not yet an order of removal, *Jennings* nonetheless impacts Hernandez-Esquivel's contentions here, at least to the extent they might urge that § 1231(a) requires he receive a bond hearing at this time.

In *Jennings*, Rodriguez sought a writ of habeas corpus, as well as declaratory and injunctive relief on behalf of himself and others similarly situated, arguing he had been

wrongfully detained in excess of six months without a bond hearing. *Id.* at 838. The District Court ultimately certified a class consisting of four subclasses, each based on a statutory provision under which its members could be detained: (1) a § 1225(b) subclass; (2) a § 1226(a) subclass; (3) a § 1226(c) subclass; and (4) a 1231(a) subclass. *Id.* at 839. The Ninth Circuit excluded the § 1231(a) subclass on appeal, finding it had been improperly certified. *Id.*

The Supreme Court held that both §§ 1225(b)(1) and (b)(2) "mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin," and that neither provision can be read to limit detention to six months. *Id.* The Court further determined that the language of § 1226(c) is even more clear; it does not "limit the length of the detention it authorizes" and provides the detainee may be released "only if" specified conditions are met. *Id.* at 846. Importantly, the Supreme Court noted that although § 1226(a) provides that aliens detained under the provision receive bond hearings at the outset of detention, "[n]othing in § 1226(a)'s text—which says only that the Attorney General 'may release' the alien 'on . . . bond'—even remotely supports the imposition" of a requirement for periodic bond hearings every six months. *Id*. at 847-48.

Section 1231(a)(6) includes language materially similar to the pertinent language in § 1226(a). Section 1231(a)(6) provides that an alien ordered removed under the section "may be detained beyond the removal period and, *if released*, shall be subject to the terms of supervision in paragraph (3)." *Id.* (emphasis added). This language is permissive; like § 1226(a) it does not reflect a statutory requirement for bond hearings. Paragraph (3) in § 1231(a)(6), in turn, allows for supervised release after the removal period and sets out the procedure for doing so, providing that:

> If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—

(A)    to appear before an immigration officer periodically for identification;

(B)    to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

(C)    to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

(D)    to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(3). As construed by *Zadvydas*, bond under § 1231 is possible only once there is no significant likelihood of removal in the reasonably foreseeable future. 533 U.S. at 699-700 (providing that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, . . . the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions").

Following *Zadvydas*, regulations were implemented to create a process for DHS to determine whether there is a significant likelihood of removal in the reasonably foreseeable future. *See* Respondents' Supplement, Dkt. No. 18 at 3-4 ("DHS regulations provide an alien who is post-order detained with regular, periodic custody reviews, and thus multiple opportunities for possible release depending on whether or not there is a significant likelihood that he will be removed in the reasonably foreseeable future.") (citing 8 C.F.R § 241.4). The District Director must conduct a post-order custody review before the 90-day removal period expires, if the detainee's removal cannot be accomplished during the removal period. 8 C.F.R. § 241.4(k)(1)(I). In conducting the post-order custody review, officials are required to review the

detainee's records and any and all documents submitted by the detainee, and must inform the detainee of the decision. *Id.* § 241.4(h)(1). The 90-day post-order custody review considers three criteria: (1) flight risk; (2) danger to the community; and (3) likelihood of obtaining travel documents. *Id.* § 241.4(e) and (f).

If the detainee is not released or removed at the time of the initial post-order custody review and has cooperated with the removal process, he must receive a second review three months later, or after 180 days from the date the removal period begins. *Id.* § 241.4(k)(2)(ii). The 180-day review is conducted by the Headquarters Post-Order Detention Unit, which considers whether there is a significant likelihood of removal in the reasonably foreseeable future. *Id.* § 241.13. The 180-day determination considers whether it is reasonable to believe travel documents can be obtained in light of the federal government's efforts, the receiving country's willingness to facilitate the process, and certain other factors. *Id.* § 241.4(e) and (f).

Additionally, a post-removal-order detainee may present a claim to the Immigration and Naturalization Service (INS) that he or she should be released from detention because there is no significant likelihood he or she will be removed in the reasonably foreseeable future. *Id.* § 241.13(d)(1). Upon receipt of a substantiated claim, INS will analyze the likelihood of removal under the circumstances, subject to existing post-order detention standards. *Id.* § 241.13(f).

Thus, although Hernandez-Esquivel vaguely alleges that "the lack of an administrative custody review process, on its face . . . violates his right to due process as guaranteed by the Fifth Amendment," a review process exists to determine whether a detainee may be released on bond. This administrative process gives the Attorney General discretion in determining whether there is a likelihood of removal as well as whether a detainee may be released and, if so, under what conditions. In this case, Respondents state that the 180-day post-order custody review determination concluded that Hernandez-Esquivel's removal was likely. Dkt. No. 13 at ("The

180-day POCR determination stated his [Hernandez-Esquivel's] removal was likely."). Insofar as Hernandez-Esquivel would challenge this discretionary decision on the merits, this Court lacks jurisdiction because the Attorney General's exercise of discretion is not reviewable. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."); *see also Maldonado*, 150 F. Supp. 3d at 794 (citing *Kambo*, 2007 WL 3051601, at *6, *8)).

*E. As-Applied Challenge.* Finally, it is necessary to address a possible as-applied challenge and the associated evolution of Hernandez-Esquivel's arguments and allegations as this matter has progressed in court. The Government's motion to dismiss and its supplemental briefing both describe the above-discussed custody reviews and procedures. In the motion to dismiss, the Government notes that "Petitioner provided no facts [in the habeas petition] suggesting that the decision-makers are not following established rules in arriving at a determination regarding the continuation of his detention." Dkt. No. 13 at 14; *see also id.* at 10 ("The sole issue before this Court is whether Petitioner is in custody in violation of the Constitution, laws, or treaties of the United States."). The Government's subsequent supplemental briefing once again notes that Hernandez-Esquivel has not alleged any failure with respect to these custody reviews and procedures:

> Under the post-order detention statute, 8 U.S.C. § 1231(a), continued detention of an alien is entrusted to DHS's discretion. DHS regulations provide an alien who is post-order detained with regular, periodic custody reviews, and thus multiple opportunities for possible release depending on whether or not there is a significant likelihood that he will be removed in the reasonably foreseeable future. *See,* 8 C.F.R. § 241.4; *Zadvydas*, 533 U.S. 678, 701 (2001). *There are no allegations here that these custody reviews have not been timely undertaken.*

Dkt. No. 18 at 3-4 (emphasis added).

But in his Reply in Opposition to Respondents' Supplement to its Motion to Dismiss,

Hernandez-Esquivel alleges—for the first time—that he has "to his knowledge" received no required custody reviews or required written notices:

> This elaborate system of [periodic] review [set forth in pertinent regulations] has been *totally ignored* in Mr. Hernandez-Esquivel's case. He has, to his knowledge, *received no 90-day, 180-day, or year review*. He has certainly *received no notices* regarding any such procedures, *or been invited to participate, as required* by the regulations. Nor has he been interviewed. The agency has never explained the reasons for his continued detention, indicated what evidence it reviewed (if any), what factors it applied (if any), or what specific conclusions it came to in his case . . . Finally, *it has completely failed to respond as required by the regulations to the multiple attempts of counsel to conduct a review*.

Dkt. No. 19 at 20 (emphasis added). These contentions filed in response to the Government's supplemental briefing are not advanced in his habeas petition or response to the Government's motion to dismiss.[7]

A habeas petitioner typically cannot advance a new claim predicated on new argument and novel factual assertions raised for the first time in a reply or supplemental brief.[8] To the extent Hernandez-Esquivel wishes to assert a claim founded on an alleged failure to follow required custody-review procedures, he failed to advance any such claim in his habeas petition or support it with sufficient factual allegations, argument, or citation to supporting authority. As its

---

[7] Hernandez-Esquivel vaguely refers in his habeas petition to two requests he made, through counsel, for "release from custody" but the petition never indicates why or how it could be unlawful or actionable for these requests to have been ignored or denied. *See* Dkt. No. 1 at 13; *see also* Dkt. No. 14 at 11 (referring to Hernandez-Esquivel having sought his release from detention through "multiple [ ] attempts, only to fall on deaf ears" and repeating the allegations regarding the two requests for release from custody, again without indicating why or how it was allegedly unlawful or actionable for these requests to be ignored or denied).

[8] *See, e.g.*, *United States v. Sangs*, 31 F. App'x 152, 2001 WL 1747884, at *1 (5th Cir. Dec. 11, 2001) (affirming, in § 2255 context, district court's refusal to consider issue raised for the first time in reply to government's answer to habeas petition and citing *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998)); *Canal Ins. Co. v. XMEX Transp.*, LLC, 48 F. Supp. 3d 958, 970 (W.D. Tex. 2014) (citing *Lombardi v. Bank of Am.*, No. 3:13-cv-1464-O, 2014 WL 988541, at *3 (N.D. Tex. Mar. 13, 2014) (noting, "a court generally will not consider arguments raised for the first time in a reply brief")); *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 936 n.9 (N.D. Tex. 2001) (argument presented for first time in reply brief will not be considered).

briefing suggests, the Government has not been afforded a meaningful opportunity to respond to any such claim or associated factual assertions, which it believes (correctly) were not sufficiently raised in the petition or otherwise properly put into dispute. *See* Dkt. Nos. 13 at 10, 14 & 18 at 3-4. The petition and response to the motion to dismiss, it bears emphasizing, include only the vaguest of allegations in this regard; nowhere are there sufficient factual allegations to permit "the court to draw the reasonable inference that the defendant is liable for" a violation of due process based on a failure to provide required custody reviews and other related procedures as they apply to Hernandez-Esquivel. *Iqbal*, 556 U.S. at 678.

### III.    Conclusion

Based on the foregoing, Petitioner's claims are denied for failure to state a claim upon which relief can be granted. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678. In reaching this conclusion, the Court has reviewed and relied on the parties' briefing and argument, including the supplemental briefing and at the hearing. But the Court has not considered any evidence beyond that attached to the pleadings.

When a habeas petition fails to state a claim, a court will typically permit an opportunity to amend under Rule 15(a) before dismissing the action, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *Lawal*, 156 F. Supp. 3d at 851.

Accordingly, **IT IS ORDERED** that Respondents' Motion to Dismiss, Dkt. No. 13, is **GRANTED.** Petitioner Hernandez Esquivel is granted leave to file an amended petition within

**thirty (30) days** to cure the pleading deficiencies outlined herein, to the extent they can be cured by amendment. If Petitioner fails to do so, the Court will enter an Order and Judgment dismissing the case.

**IT IS SO ORDERED**

SIGNED this 22nd day of June, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE